## Office of Disciplinary Counsel v. Forrest

Disciplinary Board Docket no. 134 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

McLAUGHLIN, *Member,* December 30, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 16, 2003, a petition for discipline was filed against respondent, Harry Curtis Forrest Jr. The petition charged respondent with violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement arising out of his alleged unauthorized practice of law. Respondent filed an answer to petition on October 10, 2003.

A disciplinary hearing was held on March 15, 2004, before Hearing Committee 2.08 comprised of Chair Patrick J. Broderick, Esquire and Members Lance J. Nelson, Esquire, and Richard L. Cantor, Esquire. Respondent was represented by Samuel C. Stretton, Esquire.

Following the submission of briefs by the parties, the committee filed a report on September 27, 2004, finding that respondent violated the rules as charged in the petition for discipline and recommending that respondent be suspended for one year and one day.

Respondent filed a brief on exceptions and request for oral argument on October 14, 2004.

Oral argument was held on November 10, 2004, before a three-member panel of the Disciplinary Board chaired by C. Eugene McLaughlin with Members Louis N. Teti, Esquire, and Robert E. J. Curran, Esquire.

This matter was adjudicated by the Disciplinary Board at the meeting of November 17, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg PA 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Harry Curtis Forrest Jr., was born in 1966. He is a formerly admitted attorney in the Commonwealth of Pennsylvania, having been admitted to practice in 1996 and having been placed on inactive status effective April 19, 2002. His residence address is 207 Beaumont Drive, Wallingford, PA 19086.

(3) Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(4) Respondent has no prior history of discipline.

(5) By order dated March 20, 2002, effective April 19, 2002, the Supreme Court ordered that respondent be transferred to inactive status pursuant to Rule 111(b), Pa.R.C.L.E.

(6) By certified letter dated March 20, 2002, Elaine M. Bixler, secretary of the Disciplinary Board, provided respondent with a copy of the Supreme Court order, a letter from the CLE Board, Rule 217 Pa.R.D.E. and section 91.91 through section 91.99 of the Disciplinary Board Rules, and Forms DB 23(i) and DB 24(i) (nonlitigation and litigation notice of transfer to inactive status) and Form DB 25(i) (statement of compliance).

(7) Respondent received the aforesaid documents on March 25, 2002.

(8) Respondent failed to file Form DB 25(i), thereby failing to certify his compliance with the order of the Supreme Court and with the Enforcement Rules.

*Charge I—Guyer v. Esposto*

(9) *Guyer v. Esposto* is a civil action which was commenced on January 13, 2003, before District Justice John Murray in Montgomery County, Pennsylvania.

(10) By letter dated February 27, 2003, respondent, while on inactive status, wrote to Judge Murray and:

(a) confirmed his representation of defendant David Esposto;

(b) confirmed his conversation with a member of the judge's staff in which respondent noted his representation;

(c) requested a hearing date at least 30 days from the date of the letter; and

(d) requested 30 days to provide notice to a building inspector whom respondent intended to subpoena.

(11) Respondent's correspondence of February 27, 2003, was on his legal letterhead, thereby inaccurately representing his status as an active member of the bar of the Supreme Court of Pennsylvania.

(12) Respondent failed to advise either Judge Murray or the opposing counsel of his transfer to inactive status and his consequent inability to represent Mr. Esposto.

*Charge II—Otterson v. DiChristofaro*

(13) While on inactive status, respondent represented Patrick Otterson in litigation in the Court of Common Pleas of Montgomery County.

(14) Respondent initiated the litigation by his filing of a summons on September 23, 2002.

(15) While on inactive status, respondent filed praecipe to reissue the summons on October 23, 2002, November 22, 2002, and January 8, 2003.

(16) At the times respondent took the aforesaid actions, he failed to advise the court or the opposing party

of his transfer to inactive status and therefore his consequent inability to represent his client.

### General Findings

(17) Commencing in January 2000, respondent was a sole practitioner with offices in Media, Pennsylvania.

(18) Respondent primarily had a one-client practice for a shopping center developer.

(19) After receiving the letter from the secretary of the board regarding his transfer to inactive status, respondent signed up for CLE courses but did not attend due to the death of his grandmother. He called the CLE Board for a hardship extension but was denied because the request was too late.

(20) Respondent has not taken any action to comply with the CLE requirements, but for one 2-hour class he took in May 2003.

(21) Respondent did not send letters to clients advising of his inactive status because he believed he had no active cases.

(22) Patrick Otterson was a former client and friend. Before respondent was placed on inactive status, Mr. Otterson asked respondent to represent him in an automobile accident.

(23) Respondent did not notify Mr. Otterson of his inactive status because he did not enter his appearance for Mr. Otterson and respondent intended to have his license reinstated by taking CLE credits.

(24) Respondent realized in the fall of 2002 that the statute of limitations was going to expire on Mr. Otter-

son's cause of action. He intended to have Mr. Otterson file a writ of summons pro se.

(25) Due to unforeseen circumstances, respondent signed and filed a writ of summons in the matter.

(26) When respondent filed the writ of summons for Mr. Otterson, he knew that he was not licensed to practice law.

(27) When he reissued the writ on three occasions, respondent knew that he was unable to practice law.

(28) Respondent hoped that no one in the court system would catch on to the fact that he was inactive.

(29) Respondent did not advise Mr. Otterson of his inactive status until October 2002, when he advised him to get another attorney.

(30) Respondent does not know if his appearance is still entered of record in the Otterson matter.

(31) Mr. Esposto is a friend of respondent. When he came to respondent for legal help, respondent did advise him that he was on inactive status, but he expected to take the CLE classes and be reinstated by the time of the hearing before Judge Murray.

(32) When respondent signed the letter to Judge Murray, he knew he was on inactive status and unable to practice law.

(33) Respondent never received any fees from Mr. Otterson or Mr. Esposto for work he did for them while on inactive status.

(34) David Cherry, Esquire, testified on behalf of respondent. Mr. Cherry has known respondent for 25 years.

He testified that, in Media, respondent has a good reputation as a truthful, honest, and law-abiding person.

(35) Harry Forrest Sr., father of respondent, testified that respondent has a very good reputation as a law-abiding, truthful and honest person in the Wallingford community.

(36) Currently, respondent owns his own construction business and earns his living from it.

(37) Respondent expressed remorse for his misconduct.

## III. CONCLUSIONS OF LAW

By his actions as set forth above, respondent violated the following Rules of Professional Conduct and Rules of Disciplinary Enforcement:

(1) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would be a violation of regulations of the profession in that jurisdiction.

(2) R.P.C. 7.5(a)—A lawyer shall not use letterhead that violates Rule 7.1, which in turn prohibits false or misleading communication about the lawyer or his services.

(3) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(4) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(5) Rule 217(b), Pa.R.D.E.—A formerly admitted attorney must properly notify all clients involved in pend-

ing litigation of the transfer to inactive status and the consequent inability of the formerly admitted attorney to act as an attorney.

(6) Rule 217(c), Pa.R.D.E.—A formerly admitted attorney must properly notify of the transfer to inactive status, all of the persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances for which there is a reasonable probability that they may infer he or she continues as an attorney in good standing.

(7) Rule 217(d), Pa.R.D.E.—A formerly admitted attorney is prohibited from accepting any new retainer or engaging as an attorney in any legal matter of any nature after the effective date of the transfer to inactive status.

(8) Rule 217(e) Pa.R.D.E.—A formerly admitted attorney is required to file with the Disciplinary Board a verified statement showing that the provision of the order transferring the attorney to inactive status and the enforcement rule having been fully complied with, within 10 days after the effective date of the transfer to inactive status.

(9) Rule 217(j) Pa.R.D.E.—A formerly admitted attorney is prohibited from engaging in any form of law related activities except in accordance with the requirements of 217(j).

## IV. DISCUSSION

Respondent has been charged with the unauthorized practice of law and related offenses when he, on behalf of two clients, continued to practice law after he was placed on inactive status for failure to complete his

Continuing Legal Education credits. Respondent stipulated to many of the facts, as well as to violations of Rules of Professional Conduct 5.5(b) and 8.4(c), and Rules of Disciplinary Enforcement 217(b)(c)(d)(e) and (j).

At issue is whether respondent violated R.P.C. 7.5(a), R.P.C. 8.4(b), and R.P.C. 8.4(d). R.P.C. 7.5(a) prohibits a lawyer from using letterhead that violates R.P.C. 7.1, which in turn prohibits false or misleading communication about the lawyer or his services. When respondent sent his letter to District Justice Murray, he knew he was on inactive status and unable to practice law. His letter was a misleading communication about his status as a lawyer and his services or his ability to render legal services.

R.P.C. 8.4(b) prohibits the commission of a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. While 42 Pa.C.S. §2524(a) provides for criminal prosecution in cases of unauthorized practice of law, it is doubtful that any district attorney or private party would have sought the prosecution of respondent. His conduct was not harmful to his clients in the long run and he received no monies from these clients. The board concludes that respondent did not violate R.P.C. 8.4(b).

R.P.C. 8.4(d) prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice. There is no doubt that respondent violated this rule, as he violated the Supreme Court order of March 20, 2002 and the Disciplinary Board Rules cited in the board's letter to respondent of March 20, 2002. Respondent continued to practice law when he was not permitted to do so, and he never complied with the board rules concern-

ing notification of clients and the court regarding his inactive status.

The evidence of record is clear that, notwithstanding his transfer to inactive status, respondent continued to practice law in two different legal matters. He was aware of his obligation to fulfill his CLE credits and failed to do so. He entered his appearance on behalf of his client David Esposto and wrote to a district justice on legal letterhead. He never disclosed to the district justice that he was on inactive status by order of the Supreme Court. Respondent explained his actions in that he always intended to complete his CLE credits so that he would be active by the time of the scheduled hearing in front of the district justice. However, respondent had taken no CLE credits for almost two years prior to his letter to the district justice, and he did not take another course until May 2003, almost three months after he wrote his letter to the district justice.

In the Otterson matter, respondent initiated litigation five months after his transfer to inactive status by filing a summons in a civil action on behalf of Mr. Otterson. Respondent compounded this misconduct by filing a praecipe to reissue a writ on three separate occasions. On each occasion, respondent knew he was not allowed to practice law. Respondent explained this misconduct in that he intended to prepare and draft the summons but have Mr. Otterson file it. Due to an unforeseen event, respondent ended up filing the summons for his client, even though he knew he was not permitted to do so. Respondent's explanations for his actions in these matters are not acceptable and do not excuse his misconduct.

The purpose of the disciplinary system is to protect the public from unfit attorneys and to maintain the integrity of the legal system. *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 584 A.2d 296 (1990). In determining final discipline, precedent is considered due to the need for consistency in the results reached so that similar misconduct is not punished in radically different ways. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). There are numerous disciplinary cases concerning attorneys who continue to practice law after being transferred to inactive status for failing to fulfill their CLE credits or pay their annual fee. Generally, these attorneys are suspended from the practice of law. The principal rationale for this discipline is that fulfilling Continuing Legal Education requirements, filing the attorney fee form and paying the annual fee are not mere ministerial acts. Rather, an attorney has an affirmative duty to know the status of his professional license and to comply with professional requirements. *Office of Disciplinary Counsel v. Belli,* 41 D.&C.4th 290 (1998). Moreover, if there are aggravating factors or additional charges of misconduct, the Supreme Court has suspended attorneys for more than one year. A sampling of recent cases supports the imposition in the instant matter of a suspension of one year and one day.

In *Office of Disciplinary Counsel v. Harris,* 150 D.B. 2002, 930 disciplinary docket no. 3 (Pa. July 15, 2004), Mr. Harris received notice that he was transferred to inactive status for failing to complete his CLE requirements. In defiance of the Supreme Court order, Mr. Harris continued to practice and handled the legal matters of one client. He also kept the indicia of his licensure by

maintaining a large office sign advertising him as a lawyer. Mr. Harris was suspended for one year and one day.

The Supreme Court imposed a suspension of one year and one day on an attorney who continued to practice after he was transferred to inactive status for failing to complete his CLE requirements. *Office of Disciplinary Counsel v. John D. Enright,* no. 136 D.B. 2002, 890 disciplinary docket no. 3 (Pa. March 14, 2004). Mr. Enright knowingly continued to provide services to his clients and filed a petition for appeal in a license suspension case. Mr. Enright failed to appear for his disciplinary hearing.

Even when an attorney claims he never received notice of his transfer to inactive status, the Court has imposed a suspension of one year and one day. *Office of Disciplinary Counsel v. Forman,* no. 70 D.B. 2001, 799 disciplinary docket no. 3 (Pa. Jan. 31, 2003). Mr. Forman practiced for 12 years while on inactive status. Although he attempted to excuse himself by claiming he never received notification, the record demonstrated that Mr. Forman never provided his new address to the board, as mandated by the Rules of Disciplinary Enforcement.

In *Office of Disciplinary Counsel v. Holder,* no. 131 D.B. 1999, 660 disciplinary docket no. 3 (Pa. March 23, 2001), Mr. Holder was aware that he was inactive due to CLE deficiencies, but continued to enter his appearance and attend court hearings on behalf of five clients during a three-month time period. The Supreme Court suspended Mr. Holder for one year and one day.

In sum, the Supreme Court does not tolerate lawyers who take a lax approach to the administrative rules governing the practice of law. Even in situations where lawyers lack disciplinary records and have otherwise good

reputations, the court finds their misconduct contemptuous and requires them to be suspended for one year and one day, thus obligating the lawyer to petition for reinstatement in the future.

Application of this strong line of precedent leads to the conclusion that respondent should be suspended for one year and one day.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Harry Curtis Forrest Jr., be suspended from the practice of law for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Vice-Chair Rudnitsky and Board Member Brown dissent and would recommend a one year suspension.

Board Member Nordenberg did not participate in the November 17, 2004 adjudication.

## ORDER

And now, March 24, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated December 30, 2004, it is hereby ordered that Harry Curtis Forrest Jr., be and he is suspended from the bar of this Commonwealth for a period of one year and one day.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.